O’Connell, Judge,
delivered the opinion of the count*:
This appeal by Winkelmann from the decision of the Board of Interference Examiners of the United States Patent Office awarding priority of invention to Calvert involves not only tjie same parties,but also the same general subject matter as Interference Ho. 14,296 previously involved and litigated to a final decision here in Calvert v. Winkelmann, 29 C. C. P. A. (Patents) 1200, 129 F. (2d) 536, 54 USPQ 257.
More specifically, this interference was declared for the purpose of determining the question of priority of invention between Winkel-mann’s patent Ho. 2,115,055, granted April 26,1938, on his application, Serial Ho. 55,413, filed December 20, 1935, and Calvert’s application, Serial Ho. 133,172, filed March 26, 1937.
The invention relates to a composition of matter comprising as an essential ingredient a rubber hydrochloride intimately admixed with a portion of lead oxide (litharge) and was broadly disclosed and claimed both from a process and product standpoint in the prior interference. The present interference is for a species of that broader invention and is claimed solely as a product.
The counts here in issue read — ■
1. A composition of matter comprising a rubber hydrohalide and litharge.
2. A plastic composition comprising as an essential ingredient a rubber hydrochloride intimately admixed with a minor proportion of litharge.
8. A plastic composition comprising as an essential ingredient a rubber hydrochloride intimately admixed with a minor proportion of lead oxide.
Three of the counts of the prior interference, 4,15, and 18, read—
4. The method of making a homogeneous, thermoplastic composition, adapted for molding, calendering and the like, which comprises milling a rubber hydrochloride with a substance from the group consisting of basic magnesium com *1208 pounds, basic alkali earth metal compounds, basic alkali metal compounds, basic lead compounds and amines.
15. The method of making molded and like formed products which comprises subjecting a substantially solid mixture of a rubber hydrohalide and a basic substance from the group consisting of basic magnesium compounds, basic alkali earth metal compounds, basic alkali metal compounds, basic lead compounds and amines to heat and pressure sufficient to flow the solid mixture into shape.
18. The product obtained in accordance with the process substantially as defined in Claim 15, in which the,selected basic substance is a basic inorganic compound.
Through assignment of the Calvert application to the Wingfoot Corporation, an affiliate of the Goodyear Tire & Rubber Company, and assignment of the Winkelmann patent to Marbon Corporation, the real parties in interest here, as in the prior interference, are Goodyear and Marbon.
The record submitted for review includes not only a transcript of the testimony and proceedings involved in the instant interference but also the entire record utilized by the court in reaching its decision in the prior interference.
Three patents to Winkelmann, No. 2,046,986, No. 2,075,251, and No. 2,075,254, from which all the counts of the prior interference were copied, were involved in that interference with Calvert’s application which is again involved here.
The facts presented in the record of the prior interference, as pointed out in the decision of the court in Calvert v. Winkelmann, supra, established beyond any reasonable doubt that the invention of all the counts copied from the Winkelmann patents in the prior interference had their origin in Calvert when he was employed by Calvert’s as-signee, the Goodyear Tire & Rubber Company, and that the knowledge Calvert had acquired concerning the invention and its reduction to practice while working for Goodyear was surreptitiously sold by Calvert to Winkelmann’s assignee prior to Winkelmann’s earliest alleged date of conception. Upon the facts thus established, the court awarded priority to Calvert on all the counts there in issue’.
Rule 43 of the Rules of Practice in the United States Patent Office imposes a legal obligation upon an applicant who files two or more applications relating to the same subject matter of invention, “all showing but only one claiming the same thing,” to provide in the applications not claiming the invention references to the application which does claim it.
The record here establishes that Winkelmann filed four applications relating to the same subject matter of invention, “all showing but only one claiming the same thing,” and that three of such applications not claiming the invention and involved in the prior interference contained no reference whatever to Winkelmann’s then pending and here involved application which did claim it. By the suppression of facts *1209 Re was under a legal obligation to divulge, Winkelmann was thus enabled for the time being to avoid an interference with appellee who, as Winkelmann knew, had also disclosed but did not claim the same thing.
More specifically, the Winkelmann patent, No. 2,046,986, involved in the prior interference discloses but does not specifically claim, the subject matter of the counts of the present interference. These counts were submitted as claims in Winkelmann’s then pending application, No. 55,413, which matured into the Winkelmann patent here in issue, and were rejected by the examiner on the ground that they were anticipated by Winkelmann’s patent, No. 2,046,986, involved in the prior interference. Such claims were thereafter allowed, however, upon Winkelmann’s amendment of application, No. 55,413, to provide, that that application was “a continuation in part”, of his application in patent No. 2,046,986.
Although Winkelmann at that time was involved in litigating the issue of priority submitted for decision in the copending interference, No. 74,296, he failed to move under the authority conferred upon him by Rule 109 of the Patent Office to make the allowed claims the basis of an interference and to settle the issue of priority in interference, No. 74,296, which involved not only the same parties but also the disclosure of the same invention.
The record further discloses that after the expiration of the motion period in the prior interference Winkelmann’s continuing application, No. 55,413, matured into his here involved patent, No. 2,115,055. Thereupon, appellee Calvert amended his application by copying the claims of the newly granted patent to Winkelmann and moved under Rule 109 to include the claims as a basis of interference in the then pending interference.
Calvert’s motion was denied by the examiner upon the ground that no authority was conferred either upon him or upon Calvert under Rule 109 to include claims in the issue of an interference which were copied from a patent not involved in the intereference. The examiner in rendering his decision stated, however, that Calvert might seek an interference through' an ex farte prosecution of the involved claims. Calvert thereupon adopted that procedure with the result that the present interference, No. 80.506, was declared.
Thereafter Calvert moved for judgment against the appellant Win-kelmann on the grounds of res judicata and of estoppel, urging that Winkelmann was estopped from asserting the claims in his patent because of his failure to move to include in the prior interference the claims which constitute the counts here in issue. This motion was also denied by the examiner on the ground that he was without authority to consider the motion as against a patentee and that the question *1210 was one to be considered by the Board of Interference Examiners at the final hearing.
At final hearing the party Calvert urged that on two grounds, namely, res judicata and estoppel, priority should be awarded to him. The party Winkelmann contended that there was insufficient basis for a decision upon these grounds or, if estoppel was present, that there existed a case of estoppel against estoppel.
After a painstaking review of Winkelmann’s conduct both before and after the allowance of the involved claims which constitute the counts of the present interference and after discussing a notable list of authorities dealing with the application of the doctrine of res judicata and estoppel, but without passing upon the testimonial records, the Board of Interference Examiners decided—
The principle of res acljuMeata is applicable to the imesent case and there is no ground for the application of the doctrine of estoppel against estoppel; the party Oalvert is accordingly entitled to the award of priority.
Appellant in his reasons of appeal alleges that the .Board of Interference Examiners erred in holding that the decision in Calvert v. Winhebnann, supra, is res judicata against Winkelmann; and in failing to hold that a decision of priority based on a holding that a certain invention derived from another cannot support a res judicata holding that a different and divisible invention was so derived.
Appellant further urges that the board erred in holding that Calvert was not estopped to raise the question of* res judicata and estoppel; in failing to hold that under the special circumstances of this case the doctrine of estoppel under Rule 109 is not applicable, and in failing to give consideration to the evidence submitted by Winkelmann on the question of originality, particularly the new evidence specifically introduced for the present interference.
The doctrine of res judicata is applied in the Court of Customs and Patent Appeals in the adjudication of cases which relate not only to patents but also to trade-marks. In re Retail Clerks International Protective Association, 32 C. C. P. A. (Patents) 1004, 149 F. (2d) 153, 65 USPQ 374. Res judicata as it.is here applicable, and the principle upon which it rests, is clearly and authoritatively defined in Southern Pacific Railroad Company v. United States, 168 U. S. 1, at pages 48 and 49, to the following effect:
The general principle announced in numerous eases is that a right, question or fact distinctly put in issue and directly determined -by a court of competent jurisdiction, as a ground of recovery, cannot be disputed in a subsequent suit between the same parties or their privies; and even if the second suit is for a different cause of action, the right, question or fact once so. determined must, as between the same parties or their, privies, be taken as conclusively established, so long as the judgment in the first suit remains unmodified. This general rule is demanded by the very object for which civil courts have been established, *1211 which is to secure the peace and repose of society by the settlement of matters capable of judicial determination. Its enforcement is essential to the maintenance of social order; for, the aid. of judicial tribunals would not be invoked for the vindication of rights of person and property, if, as between parties and their privies, conclusiveness did not attend the judgments of such tribunals in respect of all matters properly put in issue and actually determined by them.
The fact distinctly put in issue and directly determined, as established by the record in Calvert v. Winkelmann, supra, was the priority of invention for a method of mixing a rubber hydrochloride or hydrohalide and a basic substance from the group consisting, among other things, of basic lead compounds (litharge), and for the product thus obtained. That is the product claimed substantially in the counts of the instant interference and for which priority of invention has been previously awarded to Calvert as hereinbefore described.
There is no merit in appellant’s contention upon the facts presented here that a party to an interference under Rule 109 may of his own free will forfeit not only his right but also the opportunity to put in-interference any claims already in his application or patent,, which should be made the basis of interference between himself and any of the other parties, without affecting his right to subsequently call upon the involved parties as well as the courts to relitigate in an interference proceeding the very issue he had deliberately evaded.
Appellant’s contention that there exists here an estoppel against estoppel is predicated upon the argument in his brief—
The Patent Office refused to bring- the Winkelmann patent involved in the present interference into the prior interference even though it was asked to do so by Calvert on a motion under Rule 109, but stated that Calvert should proceed ex parte and ask for a second interference. This holding by the Patent Office, and the assent thereto by Calvert creates an estoppel against both the Patent Office and Calvert to raise the question of estoppel against Winkelmann.
The record establishes the fact that during the prosecution of the issue in the prior interference only Winkelmann knew that Winkel-mann himself was then claiming the counts of the present interference in a copending application. Having been awarded a final decision of priority on all the counts in that prior interference, the appropriate procedure on the part of Calvert to secure the present counts, according to the recommendation of the examiner, was through a second interference. Calvert' unquestionably had the right under the circumstances to amend his application after receiving the award of priority.
In view of the foregoing conclusion, it would serve no useful purpose to discuss in this opinion other aspects of the case which have been presented'by appellant. The decision of the Board of Interference Examiners is accordingly affirmed.

This cause was originally decided by this court on March 4, 1946. Thereafter, counsel for appellant filed a petition for rehearing. The rehearing was granted May 9, 1946, solely for the purpose of permitting the court to revise certain language in its original decision to which counsel for appellant had directed the court's attention.