38 C.C.P.A.(Patents)

**COTY, Inc. v. PERFUMES HABANA, S. A.**

No. 5805.

United States Court of Customs
and Patent Appeals.

June 26, 1951.

Worley, J., dissented.
See also, 190 F.2d 90.

Robert I. Dennison, Washington, D. C., (S. Stephen Baker, New York City, of counsel), for appellant.

No appearance for appellee.

Before GARRETT, Chief Judge, and JACKSON, O'CONNELL, JOHNSON, and WORLEY, Associate Judges.

O'CONNELL, Judge.

This is an appeal from the decision of the Commissioner of Patents, 83 U.S.P.Q. 438, reversing that of the Examiner of Trade-Mark Interferences in an opposition proceeding.

The appeal was argued together with 190 F.2d 90, which is decided concurrently herewith. Neither party took testimony and no appearance was recorded here for appellee when the cases were reached for argument.

The record discloses that on May 16, 1945, applicant, Perfumes Habana, S. A., a corporation organized under the laws of Cuba and doing business there at 316 San Lazaro Street, Havana, filed an application under section 5 of the Act of 1905, now 15 U.S.C.A. § 1052, for the registration of a trade-mark for use on perfumes, eau de cologne, rouges, and lip colorings.

The applicant's mark, as shown in the accompanying drawings, consisted of four parts: a box frame or outline within which the word "Chance" is printed over a small pictorial feature of the head and shoulders of a man and woman facing each other, beneath which design, in printed script, is the word "Cherigan." Continuous use of the mark by the applicant and its predecessors was alleged since 1937.

The applicant's mark was passed in due course for publication in the Official Gazette, and on July 23, 1947, appellant, Coty, Inc., a Delaware corporation filed a notice of opposition which alleged prior use since 1909 by itself and its predecessors in the United States and many other countries of the three trade-marks "Lorigan," registered September 27, 1921; "L'Origan," registered May 20, 1924; and "L'Origan," with the pictorial feature of a leaf, registered August 5, 1924. There is no dispute that such registrations are the property of appellant and that they have been properly renewed and assigned.

Appellant's marks were registered under the provisions of the Act of 1905, now 15 U.S.C.A. § 1051 et seq., for use on goods which include the identical articles and goods of the same descriptive properties for which the applicant, Perfumes Habana, S. A., sought to have its mark registered in this country.

With respect to the products sold by appellant under its respective marks down through the years, and with respect to the newcomer's applications to register, appellant made the following allegations, among other things, in its notice of opposition:

"2. Said products [of appellant's] having been manufactured with great care and skill and made of the finest ingredients, have attained an enviable reputation and a good will which have been and remain of great value to the opposer herein.

"6. Since the adoption of the term "L'ORIGAN" opposer has given the goods bearing such identifying indicia widespread publicity and by means of advertising, such as by newspapers, magazines, trade papers, radio and other media, such products have become well and favorably known in the United States of America.

"10. The mark sought to be registered by the applicant is confusingly similar to the opposer's trade marks herein described and would cause confusion in the trade and in the mind and eyes of the consuming public."

The Examiner of Interferences, H. H. Kalupy, rendered his decision on May 2, 1949, wherein he not only sustained the opposition instituted by appellant, but also decided that the applicant was not entitled to the registration of its mark. On the issue of confusing similarity the examiner held:

"While the mark of the applicant is a composite one containing certain pictorial features and other matter, it obviously is dominated by the words 'Chance' and 'Cherigan', which comprise the principal features thereof. W. B. Roddenbery Co. v. Kalich, 596 O.G. 287, 158 F.2d 289, [34]

C.C.P.A. [Patents, 745], * * * it is noted that the words 'Chance' and 'Cherigan' do not appear together as a unitary expression in the mark disclosed on the drawing of the applicant's application, but rather, each of these words is shown standing alone, being separated a substantial distance by the pictorial matter. Manifestly, each of these words is an arbitrary and distinctive term capable of denoting origin, and it seems only reasonable to assume therefore, notwithstanding applicant's contention to the contrary, that purchasers would quite frequently rely upon the term 'Cherigan' alone in calling for the applicant's products. The suffix portion of this term 'Cherigan' is identical with the suffix portion of the opposer's mark 'L'Origan', and in sound this term is believed to be so nearly like the opposer's mark 'L'Origan' as clearly to be confusingly similar thereto. Similarity in sound alone is sufficient to determine confusing similarity between marks. Marion Lambert, Inc., v. O'Conner [O'Connor], 477 O.G. 244, 86 F.2d 980, [24] C.C.P.A. [781]; McKinnon & Company v. HyVis Oils, Inc., 484 O.G. 746, 88 F.2d 699, [24] C.C.P.A. [1105]".

Perfumes Habana, S. A., appealed from the decision of the Examiner of Interferences to the Commissioner of Patents who, acting through Assistant Commissioner Daniels, reversed the examiner's decision in so far as it sustained the notice of opposition.

Recourse to the official report of the decision by the commissioner, 83 U.S.P.Q. 438, discloses that the instant application for registration by Perfumes Habana, S. A., also had been opposed by two other corporations of this country, namely, Chanel, Inc., and Cheramy, Inc., and in each of the resulting proceedings the opposition was sustained by the concurring decisions of both the Examiner of Interferences and the Commissioner of Patents. Cheramy, Inc. v. Perfumes Habana, S. A., 81 U.S.P.Q. 550, [two cases]; Chanel, Inc.

v. Perfumes Habana, S. A., 83 U.S.P.Q. 469.

The three cases just cited, together with the pertinent holdings upon which the commissioner based his reversal in the instant case, are discussed in the following excerpts from the commissioner's decision:

"It is applicant's contention that the inclusion of the word "Chance" in its mark eliminates any likelihood of confusion. "Cherigan" is, however, a conspicuous, independent portion of applicant's mark, *and as found in a previous opposition involving this mark, Cheramy, Inc., v. Perfumes Habana, S. A., 624 O.G. 975, 81 U.S.P.Q. 550, the inclusion of the word "Chance" is not sufficient to eliminate likelihood of confusion.*

\*　\*　\*　\*　\*　\*

"Considered in their entireties, there appears to be little similarity in appearance and the final portion of the mark does not appear to be so emphasized in any reasonable pronunciation of the marks as to indicate likelihood of confusion. Yeasties Products, Inc., v. General Mills, Inc., 22 C.C.P.A. 1215, 77 F.2d 523. * * * *Whether or not applicant is entitled to the registration for which it has made application must however depend upon the final outcome of certain other proceedings brought against this application. Cheramy, Inc. v. Perfumes Habana, S. A., supra; Chanel, Inc. v. Perfumes Habana, S. A., opposition No. 26,569, decided by the examiner of interference June 14, 1949."* (Italics supplied.)

The applicant, Perfumes Habana, S. A., has not appealed from the first portion of the concurring decisions of the Patent Office hereinbefore set forth, which held that the inclusion of the word "Chance" in the applicant's mark was not sufficient to eliminate the likelihood of confusion. In that respect the applicant is bound by the decision of the Patent Office,[1] and the point need not be further considered here.

---

1. In re Retail Clerks International Protective Association, 149 F.2d 153, 32 C.C.P.A., Patents, 1004.

The issue of confusing similarity must be resolved by comparing the appearance, sound, and meaning of the respective marks and evaluating those three factors in their entirety as assembled in each contested mark.

Supplementing what has been said about the contested marks in this case by the tribunals of the Patent Office, it is noted that "Cherigan," "Lorigan," and "L'Origan" are terms of three syllables each and that the first syllable is but a small part of the entire mark. Two-thirds of each mark, the suffixes thereof, are identical.

It is worthy of consideration that the portion of "Cherigan" which differs from "L'Origan" is the first syllable "Che," taken from the famous trade-mark "Cheramy," owned and in use on goods of the same descriptive properties by Cheramy, Inc., supra. The "Chan" in "Chance" was likewise appropriated by the applicant from the mark "Chanel" of Chanel, Inc., supra.

The two words here in issue are identical in appearance and sound in so far as the applicant has appropriated the last five letters of the eight letters of which appellant's entire marks are comprised. In other words, there can be no doubt, since the majority of the letters and syllables of both of these marks are identical, and identically assembled, that when the marks are pronounced as written they sound a great deal alike. That factor alone has often been the cause of rejection in this court of the newcomer's application for registration.

The action by which the Acting Commissioner of Patents put an end to appellant's contentions and overruled the Examiner of Interferences in these proceedings was embraced in this one effective paragraph from the commissioner's decision:

"With respect to similarity between "Cherigan" and "L'Origan," I am unable to agree with the examiner of interferences. It is true that the last letters of each word are the same. They clearly, however, have no similarity in meaning. (See discussion of meaning of opposer's mark in the Le Blume Import Co., Inc., v. Coty et al., [2 Cir.] 293 F. 344)."

The meaning of appellant's mark thus imported into these proceedings from the case cited by the commissioner embodies the newcomer's unsuccessful defense there whereby Le Blume sought to justify the unlawful appropriation and concurrent use of the word "Origan" on the ground that "Lorigan" or "L'Origan" consisted merely of a descriptive term which in French was the name of a rare plant or flower used in making perfume.[2] On the other hand, the commissioner accepted and applied that portion of the examiner's decision which held, as hereinbefore set forth, that the applicant's mark "Cherigan" was merely an "arbitrary and distinctive term capable of denoting origin."

Thus by decapitating two marks of world-wide distinction, "Cheramy" and "L'Origan," and by transplanting the head of one upon the body of the other, the applicant, Perfumes Habana, S. A., stands before the court with the new and arbitrary word "Cherigan" which has no meaning whatever. By intermeshing those two marks applicant derived a device designed to trap the unwary.

This court was once confronted with an analogous case involving perfume and every legal point advanced before the tribunals of the Patent Office in the instant case. See E. Daltroff & Cie v. Vivaudou, Inc., 715, 53 F.2d 536, 537, 19 C.C.P.A., Patents. The applicant's contentions there, which are directly in point here, were recited and overruled by the late Judge Hatfield writing for a unanimous court and stating:

"It is true, as argued by counsel for appellant, that the involved marks are not identical in appearance, sound, or meaning. They differ slightly in each of those characteristics. However, the question before

---

2. See United Shoe Mach. Corp. v. Compo Shoe Mach. Corp., 56 F.2d 292, 294, 19 C.C.P.A., Patents, 1009, 1012.

us is whether the marks are confusingly similar, not whether they are identical. Counsel for appellant has laid considerable stress upon the difference in meaning of the two marks. It is urged that 'Chez Lui' has a strictly masculine meaning, 'his home,' whereas 'Chez Moi,' not so restricted, means 'my home.' From this, it is argued that the masculinity of the mark 'Chez Lui' is sufficient to cause women, who, it is claimed, are practically the exclusive purchasers of perfumery, to distinguish between the two marks, and therefore confusion would not result."

 It must be remembered that the validity of an opposer's mark, as decided in the case last cited, will not be considered in a trade-mark opposition proceeding and that the mark of the newcomer must be such as to clearly avoid not only confusion in trade under the law of trade-marks, but also under the law of unfair competition.[3] Moreover, the rights to be considered in an opposition proceeding are not only the private rights of the parties to the action but also the rights of the public which are paramount to those of the respective contestants. The same rule applies in other federal courts with respect to infringement, as evidenced by the decision in the Le Blume case, supra.

Throughout these proceedings and for more than a generation it has been recognized on all sides that appellant's trademark and products here in issue have together achieved world-wide eminence for quality and distinction. That was so determined by the federal courts of this country, as well as the validity of appellant's mark, in the case of Le Blume Import Co., Inc., v. Coty, Inc., et al., 2 Cir., 293 F. 344, 348.

 The prestige of a famous trademark may not be relied upon by a new-

comer, however, as a license under which the courts may authorize the registration of an identical mark of foreign origin or a confusingly similar counterfeit for use on goods of the same descriptive properties.[4]

The Commissioner of Patents, in placing the imprimatur of the Patent Office of the United States Government upon applicant's marks by granting registration thereof, pursued a method of reasoning whereby the trivial was exploited and the important ignored. As Mr. Justice Holmes put it, writing for a unanimous Court in Coca-Cola Co. v. Koke Co. of America, 254 U.S. 143, 41 S.Ct. 113, 65 L.Ed. 189: "Of course a man is not to be protected in the use of a device the very purpose and effect of which is to swindle the public." Justice Holmes further pointed out there that the defects of an owner's trade-mark "do not offer a very broad ground for allowing another to swindle him."

Outstanding at this time are two unmodified decisions of the Commissioner of Patents which hold that the applicant's mark here in issue is confusingly similar to the marks of two other distinguished concerns dealing in perfumes and cosmetics. One of those prior decisions, at least, was known to the commissioner and recorded in the Patent Office when the decision in the instant case was handed down.

The commissioner has not explained the results that will follow in the market place from his refusal on the one hand to register the applicant's mark because it is confusingly similar to those recorded in the two other cases while at the same time authorizing the applicant on the other hand, so far as appellant is concerned, to continue the use of applicant's mark by reason of its registration.

 The decision of the Commissioner

3. Dubonnet Wine Corp. v. Ben-Burk, Inc., 121 F.2d 508, 28 C.C.P.A., Patents, 1298; Stahly, Inc., v. M. H. Jacobs Co., 7 Cir., 183 F.2d 914, 917; Yale Electric Corporation v. Robertson, 2 Cir., 26 F.2d 972.

4. Baglin v. Cusenier Co., 221 U.S. 580, 31 S.Ct. 669, 55 L.Ed. 863; Otard, Inc., et al. v. Italian Swiss Colony, 141 F.2d 706, 31 C.C.P.A., Patents, 955; Dubonnet Wine Corp. v. Ben-Burk, Inc., supra; Skol Company, Inc. v. Olson, 151 F.2d 200, 33 C.C.P.A., Patents, 715.

of Patents in the instant case should be reversed on the ground of public interest; the same ground upon which he was reversed by this court in the recent case of Tidy-House Paper Products, Inc., v. Tidy House Products Co., Etc., 189 F.2d 280, 38 C.C.P.A., Patents, ——.

Reversed.

WORLEY, J., dissents.