**40 C.C.P.A.(Patents)**

## CONTINENTAL COFFEE CO., Inc. v. CONTINENTAL FOODS, Inc.

### Patent Appeals No. 5941.

United States Court of Customs and Patent Appeals.

March 11, 1953.

James R. McKnight and Robert C. Comstock, Chicago, Ill., for appellant.

Hugh R. H. Smith, Washington, D. C. for appellee.

Before GARRETT, Chief Judge, and O'CONNELL, JOHNSON, WORLEY, and COLE, Judges.

GARRETT, Chief Judge.

This is an appeal from the decision of the Commissioner of Patents, speaking through the Assistant Commissioner, affirming the decision of the Examiner of Interferences dismissing the notice of opposition filed by appellant to appellee's application for the registration of the word "Favora" as a trade-mark for "Dehydrated Chicken Noodle Soup Mixes". See Continental Coffee Co., Inc. v. Continental Foods, Inc., 91 USPQ 271.

The following stipulation was embraced in the record certified to us by the Commissioner of Patents:

"It is hereby stipulated and agreed by and between the parties hereto through their respective counsel, the Hon. Commissioner of Patents consenting, pursuant to Rule XXV 3.(e) of the Rules of the United States Court of Customs and Patent Appeals that the following constitute the facts of the above entitled case, the questions raised on appeal and the evidence necessary to a decision of such questions.

"1. Opposer is the owner of trade mark registrations Nos. 433,706 of October 8, 1947, for the trade mark Flavorite for noodle soup mix and No.

439,673 of July 13, 1948, for the trade mark Flav-O-Rite for soup mix.

"2. Applicant on July 27, 1948, filed application Serial No. 561,362 for registration of the trade mark Favora for dehydrated chicken noodle soup mixes.

"3. Opposer is the prior user and registrant as between the parties to this proceeding.

"4. The questions raised on appeal are whether applicant's trade mark Favora is confusingly similar to opposer's prior registered marks Flavorite and Flav-O-Rite when used on identical goods and whether the Commissioner of Patents erred in holding that they are not.

"5. The only evidence necessary to a decision of such questions is the foregoing statement of facts and copies of the above named registrations.

"6. The record herein need include only this statement, petitioner's notice of appeal to this Court, copies of the above registrations and the decisions of the Examiner of Interferences and the Commissioner of Patents."

Neither the text of the notice of opposition nor the text of the answer thereto was included verbatim in the record certified to us, but the decisions of the respective tribunals of the Patent Office are included in full and the contentions pro and con made before those tribunals respecting the notice are clearly set forth in their decisions.

Those decisions and the stipulations, supra, agreed to on behalf of the parties, as interpreted by their respective counsel in presenting the case before us, render extensive discussion by us unnecessary. Certain of the issues and arguments which necessitated attention and answer below are not before us for consideration.

In the brief for appellant, interpreting the stipulation, it is said:

" * * * the parties have stipulated that the only questions raised on appeal are whether appellee's trade mark Favora is confusingly similar to appellant's prior registered trade mark Flavorite for identical goods, namely

soup mix, and whether the Commissioner of Patents erred in holding that the marks were not confusingly similar."

In the brief for appellee it is stated:

" * * * By stipulation, the only question raised is whether appellee's trade-mark Favora is confusingly similar to appellant-opposer's prior registered marks Flavorite and Flav-O-Rite when used on identical goods.".

The arguments on behalf of appellant as to confusing similarity are given under two headings:

"(a) Favora and Flavorite Are Confusingly Similar in Sound;

"(b) The Marks Are Confusingly Similar in Appearance and Meaning."

Under the first of the above headings it is said, inter alia:

"The trade marks Favora and Flavorite are both derived from the words 'favor' and 'flavor'. They would be pronounced by the average customer of soup mixes in the same way that the wellknown English words 'favor' and 'flavor' are pronounced, with the accent on the long A sound in the first syllable. Thus, appellee's mark would be pronounced Fay-vora and appellant's mark would be pronounced Flay-vorite."

Under the second heading the assertion is made that:

"In addition to the similarity between the marks in sound, appellant submits that they are also confusingly similar in appearance and meaning. In appearance, the marks have five letters in common, all of which occur in exactly the same order in both marks. A glance at a package bearing Favora or Flavorite leaves a confusingly similar impression of the appearance of the marks. In meaning, both marks are derived from the word favor and are variations thereof.

"In sound, Favora and Flavorite sound alike. In appearance, Favora and Flavorite look alike. In meaning, Favora and Flavorite have a similar significance. In view of their similari-

ties in all three particulars of sound, appearance and meaning, opposer submits that there is clearly a reasonable likelihood of confusion in trade between the marks Favora and Flavorite."

It is not clear to us just what is meant by the statement under the first heading, reading: "The trade marks Favora and Flavorite are both derived from the words "favor" and "flavor," and we are unable to agree with the last sentence of the first paragraph under the second heading, reading: "In meaning, both marks are derived from the word favor and are variations thereof."

Obviously "favora" is "favor" plus the letter "a" and, equally obviously, the addition of "a" results in a coined word not found in any dictionary. So far as we have been able to determine, the coined word has no meaning whatever when disassociated from appellee's "dehydrated chicken noodle soup mixes." This is not true of "Flavorite" which has at least a *per se* suggestiveness.

We question whether it is correct to say that "Favora" is *derived* from "favor." It results from adding the letter "a" to "favor," but whatever may be said of "Favora," it may not properly be said that "Flavorite" was derived from or built up from "favor." Assuming that "derived" properly may be used as appellant uses it, "Flavorite" is derived from "flavor"—not from "favor"—and "favor" has no definition in common with "flavor." They are distinctive words having entirely different meanings.

Editions of Webster's New International Dictionary issued from time to time over a long period of years are authority for the statement that "favor" is the anglicized form of an old French or Latin term "faveur" or "favere" having the meaning of favorable, while "flavor" is the anglicized form of an old French term "fleur" or "flaur" having a meaning such as odor.

█ Appellant"s contention as to confusing similarity of the respective marks in sound, appearance and meaning disregards entirely both the sound and the significance of the letter "l" in "Flavorite" and "Flav-O-Rite." Certainly, in considering confusion, one is not at liberty to treat as elided a letter which gives distinctiveness to a word. There may be different inflections in pronouncing the marks at issue, but, certainly, whatever sound may be given to the vowels in the respective marks, there can be no proper pronunciation of either of appellant's marks which disregards the "ell" sound. As used in either "Flavorite" or "Flav-O-Rite" "l" is neither a silent nor a surplus letter.

█ We have noted and given due consideration to the comparisons made in the brief for appellant of its marks with other marks held by this court to be confusingly similar. We do not regard any of the cases used in the comparison as being on all fours with or controlling in the instant case and it is not thought that any public interest could be served by reviewing them. As was said by us in the case of Holland-Rantos Co., Inc. v. Henry Laboratories, Inc., 195 F.2d 325, 326, 39 C.C.P.A., Patents, 877:

"We do not think it necessary to re-examine our often pronounced holding that precedents in trade-mark cases are of very little, if any, importance in litigation such as this."

The decision of the Commissioner of Patents is affirmed.

Affirmed.

O'CONNELL, Judge (dissenting).

A side-by-side comparison of the contested marks here in issue will of course yield the arguable distinctions which control the decision of majority. Such a ritual, almost invariably, exploits the trivial, ignores the important, and winds up with a finding of fact that is far from realistic. For that reason the method has been universally condemned because it is not the proper criterion by which the likelihood of confusion is to be determined. E. g., Vital Foods Corporation v. Miles Laboratories, Inc., 156 F.2d 77, 33 C.C.P.A., Patents, 1136; United Drug Co. v. Mercirex Co., 182 F.2d 222, 37 C.C.P.A., Pat-

ents, 1063. See also my opinion in Irma Hosiery Co. v. Schulman, 201 F.2d 891, 40 C.C.P.A., Patents, ——.

It is a matter of common knowledge that the ordinary person in making a purchase of inexpensive household or personal articles is not likely to remember, nor is he bound to look for and analyze, the details of the contested marks and labels of competing vendors, even if he should happen to know as a matter of fact that there are competing vendors. Magitex Co., Inc. v. John Hudson Moore, Inc., 154 F.2d 177, 33 C.C.P.A., Patents, 956, 959. It may be noted also that under modern methods of merchandising a purchaser of the goods may frequently have no opportunity to make such an examination and comparison. In any event, there is no law by which a shopper is required to carry a dictionary in one hand and a microscope in the other in order to detect the minute distinction between an established brand and a phony trade-mark. Celanese Corp. of America v. Vanity Fair Silk Mills, 47 F.2d 373, 18 C.C.P.A., Patents, 958; Guggenheim v. Cantrell & Cochrane, 56 App.D.C. 100, 10 F.2d 895.

The dictionaries contain the word "favorite" but not the word "favora," and here the newcomer has apparently appropriated a device to trap the unwary purchaser. See Celanese Corp. of America v. E. I. Dupont de Nemours & Co., 154 F.2d 143, 33 C.C.P.A., Patents, 857. The latter term is essentially nothing more than the primary name for one of the characteristics of appellee's goods, and as such is incapable of trade-mark usage and of denoting the source or personal origin of appellee's goods. Snap-On Tools Corp. v. Black & Decker Mfg. Co., 150 F.2d 432, 32 C.C.P.A., Patents, 1223.

Moreover, compound marks having one or more syllables in common may be confusingly similar, although there is a wide difference in the remaining portions of the mark. See, e. g., In re Brockway Glass Company, 154 F.2d 673, 33 C.C.P.A., Patents, 969; Coty, Inc. v. Perfumes Habana, S. A., 190 F.2d 91, 38 C.C.P.A., Patents, 1180. The same rule has been applied for

years in other federal courts of competent jurisdiction, as noted by Judge Page in Northam-Warren Corporation v. Universal Cosmetic Co., 7 Cir., 18 F.2d 774, 775:

"Whether there is an infringement of a trade-mark does not depend upon the use of identical words, nor on the question as to whether they are so similar that a person looking at one would be deceived into the belief that it was the other; but it is sufficient if one adopts a trade-name or a trade-mark so like another in form, spelling, or sound that one, with a not very definite or clear recollection as to the real trade-mark, is likely to become confused or misled."

In view of the fact that the corporate names of both of these competing vendors consist primarily of the word "Continental," confusion in trade seems all the more likely. Therefore in the public interest, as well as that of appellant, the law of unfair competition should be applied against appellee. Champion Plug Co. v. Sanders, 331 U.S. 125, 130, 67 S.Ct. 1136, 91 L.Ed. 1386; Coty, Inc. v. Perfumes Habana, 190 F.2d 91, 38 C.C.P.A., Patents, 1180, 1185; Jewel Tea Co., Inc. v. Kraus, 7 Cir., 187 F.2d 278, 282.

It is true as quoted by the majority that the rule under our procedural practice in recent trade-mark litigation, we are holding that precedents in such cases are of very little, if any importance. In fact, we are pronouncing the heresy so often that it has become routine in this court. No other courts have been cited which have adopted the same or a similar philosophy. Appellant in its brief here cited and relied upon the procedure followed and the holding made for a unanimous court by Presiding Judge Graham in American Products Co. v. Leonard, 53 F.2d 894, 19 C.C.P.A., Patents, 742.

There the mark "Zanol" was held confusingly similar to the registrant's mark "Zeno" for chemical supplies and in fortifying his position Judge Graham cited five similar cases of this court to the same legal effect. In other words, we have apparently shifted our position in trade-mark litiga-

tion from time to time from a logical to a psychological basis, with the result that in one instance we have overruled the previous judgment of our court where the marks and goods in a subsequent suit were identical with those of a previous case. Merritt-Taylor, Inc. v. C. B. Shane Corp., 195 F.2d 535, 39 C.C.P.A., Patents, 916, 919. In a series of other cases we have authorized the registration of identical marks because, as noted, the goods of the newcomer were not precisely the same as those upon which widely-advertised and long established marks had been previously used. E. g., Alligator Co. v. Larus & Bro. Co., Inc., 196 F.2d 532, 39 C.C.P.A., Patents, 939.

It is my opinion that there is no justification whatever for authorizing the registration of the applicant's mark here in issue and thereby adding to the wide confusion already existing in the markets for the purchasing public with respect to the sale of merchandise. See John Morrell & Co. v. Doyle, 7 Cir., 97 F.2d 232.